

Representing Management Exclusively in Workplace Law and Related Litigation

**Jackson Lewis P.C.**
44 South Broadway
14th Floor
White Plains NY 10601
Tel 914 872-8060
Fax 914 946-1216
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY NY | GREENVILLE SC | MONMOUTH COUNTY NJ | RALEIGH NC |
| ALBUQUERQUE NM | HARTFORD CT | MORRISTOWN NJ | RAPID CITY SD |
| ATLANTA GA | HONOLULU HI* | NEW ORLEANS LA | RICHMOND VA |
| AUSTIN TX | HOUSTON TX | NEW YORK NY | SACRAMENTO CA |
| BALTIMORE MD | INDIANAPOLIS IN | NORFOLK VA | SALT LAKE CITY UT |
| BIRMINGHAM AL | JACKSONVILLE FL | OMAHA NE | SAN DIEGO CA |
| BOSTON MA | KANSAS CITY REGION | ORANGE COUNTY CA | SAN FRANCISCO CA |
| CHICAGO IL | LAS VEGAS NV | ORLANDO FL | SAN JUAN PR |
| CINCINNATI OH | LONG ISLAND NY | PHILADELPHIA PA | SEATTLE WA |
| CLEVELAND OH | LOS ANGELES CA | PHOENIX AZ | ST. LOUIS MO |
| DALLAS TX | MADISON, WI | PITTSBURGH PA | STAMFORD CT |
| DAYTON OH | MEMPHIS TN | PORTLAND OR | TAMPA FL |
| DENVER CO | MIAMI FL | PORTLAND NH | WASHINGTON DC REGION |
| DETROIT MI | MILWAUKEE WI | PROVIDENCE RI | WHITE PLAINS NY |
| GRAND RAPIDS MI | MINNEAPOLIS MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS: 914-872-8027
E-MAIL ADDRESS: Susan.Friedfel@JacksonLewis.com

February 27, 2018

**_VIA ECF_ & E-mail (ALCarterNYSDChambers@nysd.uscourts.gov)**

Honorable Andrew L. Carter Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

Re:  **Anthes v. New York University, et al.**
     **Case No.: 17-cv-02511-ALC**

Dear Judge Carter:

We represent Defendants New York University ("NYU"), New York University School of Law ("NYU Law"),[1] and Dr. William E. Nelson (collectively the "Defendants") in the above-referenced matter. We write in response to Plaintiff's February 21, 2018 correspondence advising of his intent to issue subpoenas to Cornell University and Yale University (ECF No. 112). Subsequent to this letter, on February 25, 2018, Plaintiff sent the enclosed email advising that subpoenas would be served this week (Exhibit "A"). On February 26, 2018, Plaintiff copied our office on the enclosed email to a process service company in Ithaca, New York attaching a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of a Premises in a Civil Action for service upon Kristin A. Davis, Litigation Paralegal, Cornell University's General Counsel's Office (Exhibit "B"). The process service company responded to Plaintiff's email and is attempting service of the subpoena (Exhibit "C"). Plaintiff also sent our office a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of a Premises in a Civil Action for service upon Alexander E. Dreier, General Counsel at Yale University

---

[1] Please note that New York University School of Law is a school within New York University and is not an independent legal entity subject to suit. Accordingly, the proper Defendants herein are New York University and Dr. William E. Nelson.

(Exhibit "D"). In addition, Plaintiff is in the process of attempting to issue a deposition subpoena to NYU employee in China, Duane J. Corpis (Exhibit "E").

Defendants respectfully submit that Plaintiff is prematurely and inappropriately proceeding with the service of third-party subpoenas. Plaintiff is seeking to uncover information based upon allegations wholly unrelated to Plaintiff's claims in this action. Defendants' motion to dismiss is still pending and any discovery, particularly the discovery Plaintiff is seeking, if permitted, will serve no purpose other than to harass Defendants and the subpoenaed third-parties. Accordingly, Defendants request this Court direct Plaintiff to cease and desist from serving any additional subpoenas, including the Cornell Subpoena out for service, on any party or non-party to this action. In the alternative, Defendants request a conference with Your Honor to discuss the need for a motion to quash any of Plaintiff's subpoenas.

Thank you for your consideration.

Sincerely,

JACKSON LEWIS P.C.

*/s/ Susan D. Friedfel*
Susan D. Friedfel
Joseph J. DiPalma



EXHIBIT "A"

| | |
|---|---|
| **From:** | Louis Anthes <louis.anthes@gmail.com> |
| **Sent:** | Sunday, February 25, 2018 1:38 PM |
| **To:** | DiPalma, Joseph (White Plains) |
| **Subject:** | NYU Case Spotlights Risk of China Tie-Ups |

Joseph,

I will be proceeding with FRCP Rule 45(a)(3) subpoenas this coming week.  Please be advised, John Sexton is a target for a future subpoena.

Sincerely,

Louis Anthes

-------------------------------------------------------------------------------------

When the University of Chicago prepared to open a Confucius Institute in 2009, more than 170 faculty members signed a petition objecting to it as "academically and politically ambiguous."  https://www.wsj.com/articles/SB10001424127887323836504578553190003726324

"NYU Shanghai is not a branch of NYU," said Chancellor Yu Lizhong.  https://chinachange.org/2015/02/05/new-york-university-shanghai-what-is-the-deal/

Mary Nolan, a history professor who has been teaching at the university for almost 30 years, describes the Abu Dhabi project as "a quintessentially Sexton operation. He thinks he has some sort of a missionary calling, but he operates in a very autocratic manner. Deans are kept on a very short leash, and faculty governance has been absolutely gutted."  https://www.theatlantic.com/international/archive/2013/03/the-emir-of-nyu-john-sextons-abu-dhabi-debacle/273982/



EXHIBIT "B"

| | |
|---|---|
| **From:** | Louis Anthes <louis.anthes@gmail.com> |
| **Sent:** | Monday, February 26, 2018 3:02 AM |
| **To:** | info@ithacaerrand.com |
| **Cc:** | DiPalma, Joseph (White Plains) |
| **Subject:** | Requesting Subpoena Process Service On Cornell University General Counsel |
| **Attachments:** | Cornell Subpoena re ECF 114-1.pdf |

To whom it may concern:

I spoke with one of your company's representatives on the phone on Saturday, (607) 216-8219.  Attached to this email please find 1) a subpoena and 2) an accompanying four-page document filed in federal court ALL to be served on the Cornell University General Counsel's Office:

Kristin A. Davis
Litigation Paralegal
Office of University Counsel
Cornell University
300 CCC Bldg., Garden Avenue
Ithaca, NY 14853
e-mail:  kab264@cornell.edu
http://cuinfo.cornell.edu/counsel/
phone: 607-255-2797
fax:  607-255-2794

Please contact me to arrange for payment on the phone at your earliest convenience.  I would like to have the Certificate of Service for this subpoena to be filled-out and signed no later than March 1, 2018.

Louis Anthes
CBN 263059
(562) 284-1342

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Louis Anthes | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 1:17-cv-02511 (ALC) |
| New York University ("NYU"), NYU School of Law, William Nelson | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Kristin A. Davis,
Litigation Paralegal, Cornell University General Counsel's Office

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Per case No. 1:17-cv-02511 (ALC) (USDC, SDNY), I issue this subpoena on Cornell Univeristy and include with it the document filed as ECF No. 114-1 in the above case ("Cornell Email"). I seek ALL DOCUMENTS AND INFORMATION from Cornell regarding its use of the "Cornell Email" to deny tenure to Duane J. Corpis.

| Place: Law Office of Louis Anthes | Date and Time: |
|---|---|
| P.O. Box 2313 Long Beach, CA 90802 | 03/22/2018 11:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/26/2018

_CLERK OF COURT_

OR _[signature]_

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Louis Anthes
(self)                                                                                      , who issues or requests this subpoena, are:

947 E. Broadway, Apt. 10, Long Beach, CA 90802

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  1:17-cv-02511 (ALC)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____               _____

                                                                      *Server's signature*

                                                     _____

                                                                      *Printed name and title*

                                                     _____

                                                                      *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# A Retrospective: Refeeling the Birth of Your Ex

## Louis Anthes <louis.anthes@gmail.com>

Tue 10/11/2011 6:30 AM

To: Duane Corpis <dcorpis@cornell.edu>; djc222@cornell.edu <djc222@cornell.edu>; contactrhr@gmail.com <contactrhr@gmail.com>; icfletcher@gsu.edu <icfletcher@gsu.edu>; jab632@cornell.edu <jab632@cornell.edu>; drm236@cornell.edu <drm236@cornell.edu>; seg6@cornell.edu <seg6@cornell.edu>; rjw5@cornell.edu <rjw5@cornell.edu>; sgc11@cornell.edu <sgc11@cornell.edu>; th289@cornell.edu <th289@cornell.edu>; kh326@cornell.edu <kh326@cornell.edu>; jc585@cornell.edu <jc585@cornell.edu>; zc46@cornell.edu <zc46@cornell.edu>; jvk1@cornell.edu <jvk1@cornell.edu>; er97@cornell.edu <er97@cornell.edu>; bss4@cornell.edu <bss4@cornell.edu>; of24@cornell.edu <of24@cornell.edu>; prh3@cornell.edu <prh3@cornell.edu>; prd3@cornell.edu <prd3@cornell.edu>; slk8@cornell.edu <slk8@cornell.edu>; jmn4@cornell.edu <jmn4@cornell.edu>; trt5@cornell.edu <trt5@cornell.edu>; vc21@cornell.edu <vc21@cornell.edu>; hac27@cornell.edu <hac27@cornell.edu>; ivh1@cornell.edu <ivh1@cornell.edu>; dominick.lacapra@cornell.edu <dominick.lacapra@cornell.edu>; fl57@cornell.edu <fl57@cornell.edu>; car27@cornell.edu <car27@cornell.edu>; cv89@cornell.edu <cv89@cornell.edu>; jhw4@cornell.edu <jhw4@cornell.edu>; et54@cornell.edu <et54@cornell.edu>; rbc23@cornell.edu <rbc23@cornell.edu>; dsc37@cornell.edu <dsc37@cornell.edu>; mcg20@cornell.edu <mcg20@cornell.edu>; mbn1@cornell.edu <mbn1@cornell.edu>; jwp35@cornell.edu <jwp35@cornell.edu>; rp19@cornell.edu <rp19@cornell.edu>; as475@cornell.edu <as475@cornell.edu>; mw26@cornell.edu <mw26@cornell.edu>; dg256@cornell.edu <dg256@cornell.edu>; tl14@cornell.edu <tl14@cornell.edu>;

Cc: Dad <antheslouis_c_@hotmail.com>; Loren Anthes <loren.anthes@gmail.com>; Alex <anthes52789@yahoo.com>; Sarah Planchon <sarahjplanchon@hotmail.com>; Elaina Bott <elainabott@gmail.com>; rachelle anthes <raphina@hotmail.com>; Judge Kevin Washington <thetxjudge@yahoo.com>; Brad Jones <dbjones@alumni.clemson.edu>; Barbara Hamberg <bhamber@clemson.edu>; Blue Buddha <tnl3000@yahoo.com>; diane odonnell <odonnell_diane@yahoo.com>; Colleen Huval <colleenhuval@yahoo.com>; Jeremiah Malumaleumu <topbear46@yahoo.com>; Michael Lerner <lerner_michael@mindspring.com>; Susie Walter <susanmwalter@gmail.com>; Ron Suresha <ron.suresha@gmail.com>; David Katsnelson <dimakat@gmail.com>; Greg Duran <gregoryduran@yahoo.com>; Thierry Augustine <thierry_augustine@yahoo.fr>;

To whom it may concern:

I take the occasion of Duane Corpis' birthday to plea for attention. Specifically, I am requesting social pressure -- opposed to force, which is impossible -- be applied to Prof. Corpis, so that he and I can faithfully record our experiences and versions of our shared eleven-year past, which culminated in our simultaneous appointments at public universities in the year 2000 as professional, tenure-"tracked" historians.

I also hope he enjoys a fun, wonderful birthday. And yes. My tone is both sincere and sarcastic. That is because I am in touch with my feelings, not just my intellect. And my feelings are ambivalent about a man who clearly deserved my love, but also led me to find its limits. Those feelings of ambivalence are real, as real as the historical facts, which is the point of this email. I believe that knowing historical facts, especially the controversial and unhappy ones, help us to understand and express o ur feelings. In the meantime, sarcasm helps me to express myself. Given the disparity in security between us, Prof. Corpis should be able to easily tolerate any hint of public sarcasm directed towards him. He can always claim it is inconsequential, and will be given the benefit of the doubt, if he deconstructs any of it. Or he could accept my voice as is, and go deeper.

And for those who say all divorces are messy, and the past should be left alone, and exes should have the right to forget the past. Perhaps. Perhaps not.

My applying outside social pressure to Prof. Corpis seems necessary to me, because without it, he apparently will no longer act upon my private requests, leaving me isolated and thus unreliable as a conscientious narrator of my own personal history (whether for literary or psychological purposes), more and more lacking validation from external oral histories -- covering a decade of my adult past life. And as I am a licensed, though unemployed, attorney in the State of California, having earned a Ph.D. in U.S. History from N.Y.U. by largely mortgaging my own future, I believe I deserve the benefit of anyone's doubts about my capacity for conscientiousness. Dismissing my interest in having a reliable, autobiographical voi ce as symptomatic of my lifelong sense of "entitlement," or alternatively of my ceaseless "instability," directs a profound and real psychological violence towards me, as anyone reading this email is now made aware. I do not feel "entitled", and I am sufficiently "stable" when I communicate in earnest. And I am one of your former peers.

I refuse to let a decade of my life become merely relegated to future footnotes by the community of professional historians which provably still cites and discusses my published work. Refusal means my positing my own, independent narrative of my education, objectively observant of

the highly-educated class which educated me (and yes, I will cite Pierre Bourdieu, because I read his work deeply, because it expresses my healthy, skeptical, utilitarian intuitions regarding academia, honed prior to my entering graduate school).  First and foremost, for the community of academic historians, I accommodated the Clinton Administration's cheap-loans-with-deregulated-credit-markets-scheme of economic growth by borrowing over one-hundred-thousand-student-loan dollars in the successful and speedy (7 years) pursuit of not one, but two graduate degrees (JD/PhD) in the same scholarly field of "legal history", resulting in several peer-reviewed published papers and a book, based on the dissertation, approved by a doctoral committee, including Prof. William E. Nelson (N.Y.U.), Prof. Hendrik Hartog (Princeton), Prof. Stanley Katz (Princeton), Prof. Walter Johnson (N.Y.U.), and Prof. Hasia Diner, the latter of whom, at my dissertation defense, stated openly that my work taught her nothing.  Not withstanding Prof. Diner, I was invited to publish the dissertation as a book -- an invitation I did not actively solicit -- by Prof. Patricia Bonomi (N.Y.U.), and it was published by LFB Scholarly Press, with the generous computer support of Prof. Mary Lewis (Harvard), and a college friend's family living in Boston.

I am no longer in touch with professors from these universities, although I have made gentle and infrequent attempts at reaching out to them, including this email.  Ten years is a long time, without regard to any intention.  Perhaps the collective thought among the living is that, for someone like me who seemingly abandoned his scholarship, future engagement, on any level, is negated, as subconscious or conscious punishment for perceived irresponsibility and lack of professionalism, or as "he never really was one of us anyway," or the most likely as "history doctorates are a dime a dozen," as I've been told by employers to my face, repeatedly.  Or maybe it's just the always easy "crazy" label.  In any case, I have exhausted reasonable, soft means of reestablishing communication while I live in personal circumstances that are admittedly and objectively distressing, with the hope of reflecting upon and documenting my personal history, for a variety of purposes.  I take this history-making step of calling public attention to historian Prof. Corpis, who is objectively safe and secure in his tenure, so as to set the historical record straight between us, including any unwanted, but foreseeably predictable disagreement about any unpleasant and controversial narrative facts about my "education."  That I could have done this much earlier, years ago, should tell you that I waited to speak until I knew he was tenured, if need be.

First:  I need to document the epic story of my choosing to come out to my family while attending graduate school.   It was one particular episode of a loud and nearly violent conflict between Prof. Corpis, myself and my sister, Rachelle Anthes (N.Y.U., Performance Studies -- she was a waitress/actress at the time), when all three of us were sharing rent for a two-bedroom apartm ent in the Castle Garden neighborhood of Brooklyn, Fall 1993, where Prof. Corpis and I lived during our first year of graduate school.  Prof. Corpis and I had previously lived together in Chicago for three years as lovers and partners, telling only select friends, and no family, except my sister, Rachelle, whom we told shortly before attending N.Y.U.  One evening, my sister Rachelle called the police in Brooklyn, while Prof. Corpis was in the apartment, after I angrily removed my genitals from my pants with the intent of causing my sister emotional distress, and I also yanked our of the wall the cord for the phone she was using to threaten to out me to my parents as gay.  My sister and I didn't speak to one another for three years.  I contemplated quitting graduate school over this episode, due to shame, guilt and depression.  All my worst fears about coming out to my family had seemingly come true, so in isolation from my family, I focused on my committed relationship with Prof. Corpis and on work and graduate school.

Second:  I need to document the fact of the **mutually** psychologically and physically abusive relationship Prof. Corpis and I had during our partnership, and the fact that he, specifically, was physically abusive, repeatedly, over the course of years, towards me.  Documentation is not a trivial need; nor is it a trivial undertaking.  I could discuss these incidents by myself from my own memory, but in calling attention to these truths, I seek to avoid foreseeable controversies over factual narrative elements, since controversies over factual narrative elements were often, but not exclusively, the immediate cause of the physical abuse directed towards me.  For example, I recall several occasions where our shared telephone bill in the 1990s, in Chicago and Brooklyn, was extremely, unusually high, and Prof. Corpis would, on several occasions, deny the facts and feign ignorance about them, forcing me more than once to berate him, for hours, into confessing the truth of his expensive deceptions -- repeatedly purchasing pornography and using live telephone sexual services, spending hundreds of dollars on a single phone bill, every few months or so, behind my back, for years, while we were lovers and partners in our twenties, making little money to spend on secret sex calls lasting hours at times.  I had almost no interest in pornography until I met Prof. Corpis.  When we lacked sexual intimacy, Prof. Corpis and I gave each other permission to explore pornography, and this arrangement between us contributed to, but did not cause of course, loss of control ov er my feelings as a Clemson University professor towards a 25-year-old graduate student.  Additionally, there are stories of repeated family conflicts, involving both of our quite different families, that also augmented all our problems at the same time.  I recall vividly one visit to Columbia, South Carolina, which resulted in Prof. Corpis screaming at his late father, in tears, forcing me to excuse myself and walk alone outside, to avoid the intensity.  These stories happened, and I want to document them accurately and fairly.

Third:  I need to document the fact that Prof. Corpis and I were both against the invasion of Afghanistan in October of 2001.  As intellectuals, with a better than CIA Analysts' level of understanding about globalization, modernity, US power, if not Afghanistan's deep history itself, we planned to help co-organize in downtown Atlanta an anti-war rally after the events of September 2001 but prior to the October 2001 U.S. invasion of Afghanistan, and proceeded to place rally posters on lamp posts on public property in the immediate vicinity of the George State Capitol Building at nighttime, on foot.  In so doing, we were both detained by state police who issued warnings to us not to enter the same property ever, without their pri or, official permission.  Prof. Corpis days later told me that he was chastised for these acts by his Georgia State University colleague, Prof. Ian Fletcher, who later also wrote him a strong recommendation, when Prof. Corpis answered the invitation to apply for a tenure-track position at Cornell University.  He admits Prof. Fletcher lending his support was a crucial reason why he went through G.S.U. and on to Cornell:  "My former colleague Ian at GSU wrote me what I know was a great letter of recommendation, but his personal support while in Atlanta was essential for me in my academic life."

As per Prof. Corpis' previous accounts to me, Prof. Fletcher both chastised Prof. Corpis for protesting and also networked on Prof. Corpis' behalf, after Prof. Corpis received the invitation to join Cornell some years later.  Simultaneously, my former dissertation adviser, Prof. William Nelson told me, personally, on the telephone in October 2001, shortl y after the U.S. invasion of Afghanistan, when I finally left Prof. Corpis and moved to France to live near my sister who is still married there that I sounded "crazy" for opposing the U.S. invasion of Afghanistan, an action he compared in our conversation to the U.S. response following the Japanese attack on Pearl Harbor.  Likely made in a state of 9/11-hysteria and jingoism, Prof. Nelson's telephone statements calling me "crazy" were reckless, even if he claims they were not maliciously made to undermine my self-confident opposition to his nationalism:  France later vetoed the U.S. at the U.N. prior to the U.S. invasion of Iraq in March 2003, when I was still protesting war in France.  Prof. Corpis, however, had Prof. Fletcher to help shepherd him from Atlanta to Ithaca, throughout the entire "War on Terror."

The funny thing is, both Prof. Corpis and I were right in actively opposing the U.S. invasion of Afghanistan.  However, he received tenure; I was immediately labelled "crazy."  Despite receiving support from some former friends and colleagues requesting my immediate return, I continued to oppose the invasion of Afghanistan from France, and through the U.S. invasion of Iraq, about a year-and-a-half after the invasion of Afgh anistan.  I was right to oppose the U.S. invasion of Iraq, and I made every effort to let as many French people and immigrants to France know of my opposition to the U.S. wars in Afghanistan and Iraq, and the War on Terror in general.  Again, France vetoed the U.S. at the U.N. concerning the unilateral U.S. invasion of Iraq.  My ego is not so large as to claim credit for this veto, but I believe my voice and activism helped mobilize French public opinion from being in favor of the war in Afghanistan to against the war in Iraq, which made the French U.N. veto popular.  I was a teacher of English in Paris and its suburbs.  I met dozens of business people, cultivated long-term relationships, and repeatedly explained my reasoned opposition to the wars -- in French and English.  Over 18 months of time.

Consistently, I have sacrificed.  I sacrificed when Prof. Corpis hit me, and never once hit back.  I sacrificed going through two graduate programs to counter criticism I was a dilettante in legal history, a "dime-a-dozen."  I sacrificed borrowing over one-hundred-thousand dollars with the goal of obtaining a superior education.  Once employed, I sacrificed by driving two-hours each way, twice a week, between South Carolina and Atlanta, where Prof. Corpis lived in Section 8 housing for three months before moving to a nice loft, where he could walk to work.  I sacrificed giving up my job, in the face of harassment and discriminatory treatment from my university.  I sacrificed after leaving my job, when I protested two American wars overseas, where it mattered.  Even when I was legally obliged to return at the end of my visa, I did, and yet I sacrificed further by making two pornographic films in California, at literally the exact same time, Spring 2004, Americans were watching the pornography of Abu Ghraib in Iraq.  And I sacrificed by not making Prof. Corpis' tenure battle more difficult with what he might have claimed were unnecessary distractions from his ex.

I have sacrificed.  For myself.  For my lover.  For my values.  For others.  For my freedoms.  For my family.  For history.

I often, frequently, obsessively, truthfully wonder, how Prof. Corpis -- a scholar of barbaric religions and the modern state, two of the key themes of the so-called "War on Terror" -- negotiated his very public, and abstract, radical politics with the visceral facts of the "War on Terror" -- the torture, the assassinations, the illegal invasions, the surveillance, beyond just focusing on himse= lf.  I suppose he took talk of American imperialism at face value, and cast himself as a global citizen obliged to pursue the professional preservation of history.  By contrast, I know how I negotiated the "War on Terror" -- by rejecting it in practice, as much as I could, as visibly as I could, because my scholarship seemed at th e time to be precisely the intellectual "ground zero" of the "War on Terror":  "Immigrants and Lawyers," the title of my 2003 book, and the front line of the Bush Administration's initial efforts at prosecuting the "War on Terror" without lawyers.

So, I am the odd man out, because my protests lack historical note, diminutive and forgettable in retrospective.

Is that so wrong:  to want to be remembered by the future, when you have no children, when you spent a good part of your life documenting others' pasts?  From my perspective, Prof. Corpis, who has a demonstrated capacity for deception and self-serving behavior towards me, occupies the position of reliable, authoritative narrator of pleasant and unpleasant past intimacies between us, which would simply be otherwise forgotten, except of course by my family, which as my dying mother unintentionally showed me is both a legal construct and a place of genuine emotion.  My family will naturally interpret episodes from my life story, including the fact of my expensive graduate education, to protect their own self-narratives.  In the past, they referred to me as "the man" in my relationship to Prof. Corpis, and they have told me that Prof. Corpis was not good enough for me -- all of which hurt, as likely intended, to separate us, which may have been the right thing to do, but it was never their decision to make for two, independent adult men.  So, obviously, my time spent in graduate school with Prof. Corpis was never taken seriously by my family, which is one explanation for why half of my family still refuses to acknowledge I am a licensed attorney.  My family attacked Prof. Corpis, not because he hit me, because in the end, they wanted to hurt me, which didn't work.  Seeing all this, and seeing that I have not published a true word about my past relationship to Prof. Corpis, outside of emails, I have requested cooperation from Prof. Corpis, proposing a friendship at a distance, but my pleas go ignored, as if I would be wasting his valuable time.  I believe my family benefits from my personal history staying undocumented, and I believe Prof. Corpis benefits as well:  doubts about any narrative undermines confidence in it.

**Duane:  I need your assistance "to document in detail" the significant, meaningful, consequential and, yes, painful time we spent together -- for my individual benefit, even if you would not feel benefited.  Whether it is by your conscious design or not, the words &quo t;Affirmative Action" and "globalization" should not be used to make my perspective on our 1990s partnership disappear.   I would like to document our past privately, with your support, so that I am free to narrate my own story, maybe to publish it at an opportune time, not necessarily for my financial profit, but for my own psychological benefit.  I'm sorry I had to use the occasion of your birthday to get your attention, but you know I have**

repeatedly written you, more discretely, to get your attention, without success.   Given how political our relationship had been, I cannot be just forgotten, even if I'm just unemployed.  My brain won't let me forget.

All the statements, humorous, bitter and bland, written in this email I believe to be truthful.  I publish them not to cause distress to Prof. Corpis, or anybody else, although I recognize publishing may cause him distress despite my lack of intention, but to assert my right to tell my own story about myself, given the extreme lengths I have traveled to protest war and to enjoy my sexual freedom, without causing pregnancy or spreading STD viruses or selling out (although I could have...).

Any complaints about the substance of this email, or the act of my sending it, can be filed with the California State Bar, or you just can try to write me back.

-- Louis Anthes, CBN 263059

EXHIBIT "C"

| | |
|---|---|
| **From:** | Susan Martin <info@ithacaerrand.com> |
| **Sent:** | Monday, February 26, 2018 8:56 AM |
| **To:** | Louis Anthes |
| **Cc:** | DiPalma, Joseph (White Plains) |
| **Subject:** | Re: Requesting Subpoena Process Service On Cornell University General Counsel |

I have received your subpoena and will let you know when service is complete.

On Mon, Feb 26, 2018 at 3:02 AM Louis Anthes <louis.anthes@gmail.com> wrote:

To whom it may concern:

I spoke with one of your company's representatives on the phone on Saturday, (607) 216-8219. Attached to this email please find 1) a subpoena and 2) an accompanying four-page document filed in federal court ALL to be served on the Cornell University General Counsel's Office:

Kristin A. Davis
Litigation Paralegal
Office of University Counsel
Cornell University
300 CCC Bldg., Garden Avenue
Ithaca, NY 14853
e-mail: kab264@cornell.edu
http://cuinfo.cornell.edu/counsel/
phone: 607-255-2797
fax: 607-255-2794

Please contact me to arrange for payment on the phone at your earliest convenience. I would like to have the Certificate of Service for this subpoena to be filled-out and signed no later than March 1, 2018.

Louis Anthes
CBN 263059
(562) 284-1342
--
Sincerely,

Sue Martin

Susan B. Martin
Ithaca Errand & Process Service
4064 County Road 4
Burdett, NY 14818

Phone (607) 216 8219

www.ithacaerrand.com

# EXHIBIT "D"

**DiPalma, Joseph (White Plains)**

**From:**           Louis Anthes <louis.anthes@gmail.com>
**Sent:**           Monday, February 26, 2018 6:32 PM
**To:**             DiPalma, Joseph (White Plains)
**Subject:**        Notice of Issuance of Subpoena to Yale University General Counsel
**Attachments:**    Yale Nelson Subpoena.pdf

Joseph,

Please find the attached copy of the subpoena sent via fedex issued on Yale University.  FEDEX tracking no.:
771580168789

Sincerely,

Louis Anthes

1

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| Louis Anthes | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 1:17-cv-02511(ALC) |
| New York University ("NYU"), NYU School of Law, William Nelson | ) ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Alexander E. Dreier, General Counsel

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Per case number 1:17-cv-02511(ALC) (USDC, SDNY), I issue this subpoena on Yale University.  I seek ALL DOCUMENTS AND INFORMATION pertaining to the affiliation and termination of affiliation of William E. Nelson at Yale University with specific regard to findings or allegations of sexual misconduct against him.

| Place: Louis Anthes<br>P.O. Box 2313<br>Long Beach, CA  90802 | Date and Time:<br><br>03/22/2018 1:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/26/2018

_CLERK OF COURT_

OR _____

_____     _____
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Louis Anthes (self) _____ , who issues or requests this subpoena, are:

947 E. Broadway, #10, Long Beach, CA 90802, (562) 363-5052, louis.anthes@gmail.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  1:17-cv-02511(ALC)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



EXHIBIT "E"

# DiPalma, Joseph (White Plains)

| | |
|---|---|
| **From:** | Louis Anthes <louis.anthes@gmail.com> |
| **Sent:** | Monday, February 26, 2018 10:54 AM |
| **To:** | Shanghai, ACS; DiPalma, Joseph (White Plains) |
| **Subject:** | Re: Please Confirm Procedures for Subpoena Service of Process |
| **Attachments:** | Anthes Shanghai Consulate 26-Feb-2018 07-50-10.pdf; Anthes 263059 _ The State Bar of California.pdf |

To whom it may concern:

Please find the **re-sent, corrected** attached letter, and supporting one-page pdf file of my California state bar website page, regarding procedures for obtaining deposition testimony from American citizen Duane J. Corpis, working currently in Shanghai.

Thank you,

Louis Anthes

On Mon, Feb 26, 2018 at 7:42 AM, Louis Anthes <louis.anthes@gmail.com> wrote:
> To whom it may concern:
>
> Please find the attached letter, and supporting one-page pdf file of my California state bar website page, regarding procedures for obtaining deposition testimony from American citizen Duane J. Corpis, working currently in Shanghai.
>
> Thank you,
>
> Louis Anthes
>
>
>
> On Sun, Feb 25, 2018 at 9:42 PM, Shanghai, ACS <ShanghaiACS@state.gov> wrote:
>> Hi Louis,
>>
>> Thank you for your email.
>>
>> Please provide us with a formal request on letterhead from your side and we will review.
>>
>> Please also let us know if this is a criminal or civil case and we can provide further guidance on what potential assistance we can provide.
>>
>> Best,

**From:** Louis Anthes [mailto:louis.anthes@gmail.com]
**Sent:** Monday, February 26, 2018 8:15 AM
**To:** Shanghai, ACS
**Cc:** DiPalma, Joseph (White Plains)
**Subject:** Please Confirm Procedures for Subpoena Service of Process

To Whom It May Concern:

I am the plaintiff attorney directing in litigation in United States District Court, Southern District of New York, case number 1:17-cv-02511 (ALC).

I send this email to enquire about procedures for submitting a Subpoena to Dr. Duane J. Corpis, currently employed by New York University at its affiliated Shaghai campus office:
https://shanghai.nyu.edu/academics/faculty/directory/duane-corpis

I understand that according to 28 U.S.C. §1783 and Fed.R.Civ.Pro. 45(a)(3), that an American citizen residing abroad may be served a subpoena, but through the consulate office where the American citizen resides:

U.S. Consulate General Shanghai
1469 Huai Hai Zhong Road
(Near Wulumuqi Nan Lu)
Shanghai, China, 200031
Phone: 86-21 8011-2200

Please confirm that the US Consulate in Shanghai will receive my signed subpoena on Dr. Corpis (either by email or by mail), and further, the Consulate will serve this subpoena on Dr. Corpis, as per appropriate US laws and rules.

Sincerely,

Louis Anthes

**Official - Privacy/PII**

**UNCLASSIFIED**

Louis Anthes
P.O. Box 2313
Long Beach, CA 90802
(562) 363-5052
louis.anthes@gmail.com

February 26, 2018

Sent via email to: ShanghaiACS@state.gov

American Citizen Services (ACS) Unit (BD)
Consular Section / U.S. Consulate General, Shanghai
1038 W Nanjing Rd – Westgate 8th floor
梅龙镇广场8楼 (Méi'lóng'zhèn guǎngchǎng)

**RE: Anthes v. New York University ("NYU"), et. al., Case No. 17-cv-2511 (ALC)**

To whom it may concern:

I am sending this letter regarding my request to issue a subpoena in the civil case cited above on Duane J. Corpis, an American citizen working at its NYU-affiliated campus Shanghai:
https://shanghai.nyu.edu/academics/faculty/directory/duane-corpis

I understand that, according to 28 U.S.C. §1783 and Fed.R.Civ.Pro. 45(a)(3), an American citizen residing abroad may be served a subpoena but through the consulate office where the American citizen resides.

The purpose of issuing my subpoena is to obtain information from Dr. Corpis regarding his denial of tenure at Cornell University, an unsolicited phone call he made to me in March 2017 indicating the same, and his threat to me of a lawsuit against me -- in addition to other factual matters related to the above-mentioned case.

The specific subpoena I seek to issue is a "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION" ("Form AO 88A"). If it is possible to schedule a deposition of Dr. Corpis at a time and in a manner suitable to his schedule (on a return trip to the United States or in a remote video recorded deposition), then I can wait before completing and signing "Form AO 88A" until I receive confirmation from him, through the consulate's office, regarding the time and manner reasonably convenient for him.

Sincerely,

Louis Anthes

Cc: Joseph DiPalma

 The State Bar *of California*

**Louis Anthes - #263059**

**Current Status:  Active**
This attorney is active and may practice law in California.

See below for more details.

**Profile Information**
*The following information is from the official records of The State Bar of California.*

| | | | |
|---|---|---|---|
| Bar Number: | 263059 | | |
| | Louis Anthes | **Phone Number:** | (562) 363-5052 |
| Address: | PO Box 2313 | | |
| | Long Beach, CA 90801-2313 | **Fax Number:** | Not Available |
| Email: | Dr.Louis.Anthes@gmail.com | | |
| County: | Los Angeles | **Undergraduate School:** | Univ of Chicago; Chicago IL |
| District: | District 2 | | |
| Sections: | None | **Law School:** | New York Univ SOL; New York NY |

**Status History**

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 5/11/2009 | Admitted to The State Bar of California |

**Actions Affecting Eligibility to Practice Law in California**

Disciplinary and Related Actions
This member has no public record of discipline.

Administrative Actions
This member has no public record of administrative actions.

**Attorney Provided Information**
*The information in this box was provided by the attorney and has not been verified or monitored. The State Bar does not recommend or endorse any attorney.*



Practice Area(s):
Alternative Dispute Resolution
Business Law
Criminal Law

Other Language(s) Spoken by this Attorney:
French

© 2018 The State Bar of California