**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Dr. Louis Anthes,

        Plaintiff,

                              17cv2511 (ALC)

        - against -                  **MEMORANDUM & ORDER**

New York University, et al.,

        Defendants.
-------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

        Plaintiff Louis Anthes ("Dr. Anthes") is a California resident who obtained advanced degrees at New York University ("NYU") in the late 1990s and early 2000s. Plaintiff initially pursued doctoral studies in NYU's history department, but at some point matriculated to NYU's School of Law ("NYU Law") with the assistance of Professor William Nelson ("Nelson"). Nelson informed Plaintiff that, while he would incur student loan debt at NYU Law, the school's Loan Repayment Assistance Program ("LRAP") could be available to Plaintiff to assist in the repayment of his loans. After Plaintiff graduated from NYU with a Ph.D. and a law degree on or around 2001, he was briefly employed as a university professor, but has since had limited employment and still owes a substantial amount of student debt.

        Plaintiff has filed a pro se complaint[1] against NYU, NYU Law, and Nelson. The complaint asserts claims of civil fraud, deprivation of rights under color of law, conspiracy to

---

[1] The Court notes that, given that Plaintiff is an attorney licensed in California, he is not entitled to the special solicitude and latitude courts traditionally afford to pro se litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("lawyer representing himself ordinarily receives no such solicitude at all"); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (holding that "pro se attorneys . . . cannot claim the special consideration which the courts customarily grant to pro se parties" (quoting *Harbulak v. Cty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)) (internal quotation marks omitted)).

violate the Thirteenth Amendment, conspiracy with the New York City Government to deprive him of rights, negligent misrepresentation, breach of contract, breach of implied warranty, respondeat superior, and restraint of trade.

This matter is before the Court on a full selection of motions: the Defendants' motion to dismiss, as well as Plaintiff's requests for judicial notice, motion for change of venue, motions for leave to file an amended complaint, and motion to vacate the Court's decision on his motion for joinder. For the reasons set forth in detail below, the Court orders as follows: Plaintiff's request for judicial notice is GRANTED IN PART; Defendants' motion to dismiss the amended complaint is GRANTED; Plaintiff's motions for leave to file an amended complaint are DENIED; and Plaintiff's motion to vacate the Court's decision on his joinder motion and Plaintiff's motion to transfer venue are DENIED as moot.

## BACKGROUND

### I.     Factual Background

For the purposes of this motion, the Court takes Plaintiff's allegations as true and draws all reasonable inferences in his favor.

Plaintiff graduated from the University of Chicago with bachelor's and master's degrees in 1990 and 1991, respectively, without incurring student loan debt. *See* First Amended Complaint ("Am. Compl.") at 7 (ECF No. 25).[2] He was initially accepted into NYU's graduate program in history in 1993 and ultimately matriculated there. *Id.* at 7-8. At some point in 1993, he interviewed with Nelson. *Id.* at 8. Nelson informed Plaintiff that Plaintiff's "enrolling in

---

[2] The Court does not consider allegations in Plaintiff's original complaint. *See Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) ("Where, however, an amended pleading is not in 'direct' contradiction with the original pleading, courts apply the general rule recognizing that an amended pleading completely replaces the original pleading.") (quoting *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070 (MKB), 2014 WL 1875037, at *3 (E.D.N.Y. May 9, 2014)).

NYU and assuming student loan debt would be the initial part of NYU's offer to Plaintiff for his total graduate education." *Id.* Plaintiff informed Nelson that he was interested in earning a law degree from NYU in the future. *Id.* Plaintiff began to incur student debt to fund his coursework. *Id.* at 7-8.

Plaintiff completed his Ph.D. coursework at NYU by 1996 and enrolled at NYU Law around the same time while continuing to work on his dissertation. *Id.* at 8. Plaintiff alleges that Nelson, with the knowledge and support of NYU officials, facilitated his matriculation to NYU Law, which Plaintiff claims formed a contract between him and Nelson. *Id.* at 8-9. Plaintiff does not state the agreement's terms, but rather insists that "confirming . . . the terms . . . requires obtaining the . . . testimony of . . . Dr. Nelson." *Id.* at 9. Plaintiff does articulate that Nelson informed him that NYU Law's LRAP was "available to" him. *Id.* However, Plaintiff was never informed that Defendants could cut ties with him or renounce his credentials, which were presented to him after he ultimately graduated from NYU Law in 2000. *Id.* at 9-10.

Following graduation, with Nelson's advice, Plaintiff turned down two potentially more lucrative legal employment offers to commence a teaching position to Clemson University. *Id.* at 10-11. Plaintiff was terminated from Clemson University the same year. *Id.* at 11.[3] After September 11, 2001, during a phone call with Nelson, Nelson stated to Plaintiff that "[t]he United States was attacked like Pearl Harbor," and Plaintiff felt "dishonestly judged and chastised" by Nelson. *Id.* at 12.

---

[3] An exhibit to Plaintiff's complaint indicates that Plaintiff may have "resigned" because of "enormous personal and professional distress" resulting from one of his colleagues' "violat[ing his] privacy and display[ing] a homophobic bias. . . [against him]." *Id.* Ex. D. "[T]he Court is not required to accept as true pleadings that are directly contradicted by" exhibits appended to the complaint. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.") (citation omitted). In any event, the distinction is immaterial to the analysis that follows.

Plaintiff was, at some point, diagnosed with major depressive disorder and generalized anxiety, but has otherwise "enjoyed fair health" to date. *Id.* at 3, 12 & Ex. B. In 2008, Plaintiff passed the California bar examination. *Id.* at 12. However, Plaintiff has remained mostly unemployed, and his total income from 2008 to present does not exceed $13,000. *Id.* He remains in substantial student debt. *Id.* at 12-13.

Plaintiff indicates that he "contemplated" taking "unspecified legal action regarding his student debt years before" this lawsuit, but his motivation "peaked" after he received a call from Dr. Duane J. Corpis on March 16, 2017. *Id.* at 3-4. At the time of Corpis' call, Corpis was working for NYU in China. *Id.* at 3. During that call, Corpis "made allegations" and threatened Plaintiff with a lawsuit, but Plaintiff does not specify the nature of those allegations, the potential lawsuit, or whether Corpis acted upon that threat. *Id.* at 3-4.

## II.    Procedural History

Plaintiff filed his pro se complaint on April 6, 2017. *See* Complaint (ECF No. 2). Plaintiff initially raised causes of action for fraud and violations of his civil rights. *See id.* at 5-7. On May 22, 2017, Plaintiff filed his First Amended Complaint, raising the following nine causes of action: civil fraud, deprivation of rights under color of law, conspiracy to violate the Thirteenth Amendment, conspiracy with the New York City Government to deprive him of rights, negligent misrepresentation, breach of contract, breach of implied warranty, respondeat superior, and restraint of trade. *See* Am. Compl. at 14-23.

Upon filing his First Amended Complaint, Plaintiff concurrently requested that the Court take judicial notice of certain facts. *See* Request for Judicial Notice (ECF Nos. 26-29). On June 1, 2017, Defendants informed the Court requesting, among other things, leave to file a motion to dismiss Plaintiff's complaint for failure to state a claim. *See* Letter from Susan Friedfel dated

4

June 1, 2017 (ECF No. 30). On June 16, 2017, the Court held a conference and set a briefing schedule on Defendants' proposed motion. *See* Order Setting Briefing Schedule (ECF No. 36).

On July 17, 2017, Plaintiff supplemented his request for judicial notice. *See* Supplemental Motion to Take Judicial Notice (ECF Nos. 39-41). On July 27, 2017, Plaintiff filed a motion to change venue to the Central District of California (*see* Motion to Change Venue (ECF Nos. 43-45)), formalizing the request to transfer venue also reflected in Plaintiff's complaint. *See* Am. Compl. at 5-6. Defendants opposed both the request for judicial notice and the motion to change venue. *See* Declaration of Susan D. Friedfel in Opposition to Supplemental Motion to Take Judicial Notice (ECF No. 55); Memorandum of Law in Opposition to Motion to Change Venue (ECF No. 56).

On July 28, 2017, Defendants submitted their motion to dismiss, requesting that Plaintiff's First Amended Complaint be dismissed without leave to amend. *See* Memorandum of Law in Support of Motion to Dismiss ("Defs' Mem.") (ECF No. 48). Plaintiff opposed, and included a proposed Second Amended Complaint with his opposition. *See* Memorandum of Law in Opposition to Motion to Dismiss ("Pl's Mem.") (ECF No. 53); *see also* [Proposed] Second Amended Complaint (ECF No. 54-1). On October 3, 2017, Plaintiff submitted an additional request for judicial notice. *See* Declaration in Support of Plaintiff's Motion for Judicial Notice (ECF No. 63).

On November 26, 2017, Plaintiff filed a motion for joinder, a temporary restraining order, and a preliminary injunction as to nonparty Nelnet, Inc. ("Nelnet"), the loan servicer of Plaintiff's student loans. *See* Memorandum of Law in Support of Emergency Motion for Temporary Restraining Order Against Nelnet, Inc. (ECF No. 67). Plaintiff's submission indicated that Nelnet informed him that, if he did not make payments on his student loan before

December 9, 2017, his loans would be placed in default. *Id.* at 3. Plaintiff's motion requested that the Court join Nelnet as a party and then enjoin them from communication with Plaintiff regarding his loan debts, attempting to place Plaintiff's loans in default, or enforcing any deadlines for payment. *Id.*

The Court denied Plaintiff's request for emergency relief without prejudice because Nelnet, Inc. was not a party to this case. *See* Order Denying Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 69). However, the Court set a briefing schedule on Plaintiff's motion for joinder. *Id.* On December 6, 2017, the Court denied Plaintiff's motion for joinder, reasoning that Plaintiff had not stated a clear rationale for joinder of his loan servicer, and that his intent to seek a temporary restraining order alone could not constitute a valid basis for joining them as a party. *See* Order Denying Motion for Joinder ("Joinder Order") (ECF No. 73).

On December 7, 2017, Plaintiff filed a letter seeking to vacate the Court's decision denying his motion to join Nelnet as a party. *See* Letter dated Dec. 7, 2017 (ECF No. 74). The Court set a briefing schedule, briefing was completed, and that motion remains pending. *See* Order (ECF No. 76).

On December 21, 2017, Plaintiff filed a letter requesting, among other things, that Defendants' counsel stipulate to the filing of Plaintiff's Second Amended Complaint. See Letter dated Dec. 21, 2017 (ECF No. 86). Plaintiff also attempted to file his Second Amended Complaint on the Electronic Case Filing (ECF) system. *See* Second Amended Complaint (ECF No. 85). However, because Plaintiff had not obtained leave of the Court nor consent of the Defendants, the Court construed Plaintiff's letter as a motion for leave to amend his complaint and his [Proposed] Second Amended Complaint as an attachment to that motion. *See* Order

(ECF No. 87). The Court set a briefing schedule, briefing was completed, and that motion remains pending. *Id.*

On January 25, 2018, Plaintiff filed a letter requesting that this Court either grant his change of venue motion or allow him to file a motion to disqualify me based on an appearance of bias pursuant to Fed. R. Civ. P. 63. (ECF No. 94.) The Court set a briefing schedule, briefing was completed, and this Court denied Plaintiff's motion for disqualification. (ECF No. 117.)

The opinion on each of the pending motions now follows.

## DISCUSSION

### I. Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of a number of facts and documents. Specifically, Plaintiff requests that this Court take judicial notice of the following items: his Certificate of Standing for the State Bar of California; his Certificate of Vital Record; his Attorney Profile for the State of California; his Marriage Certificate; his "Decree Changing Name"; a Transcript of Proceedings for a matter involving an alleged dispute between Plaintiff and his neighbor in the California Superior Court; print-outs of various internet search results; print-outs of various webpages owned and operated by Defendant(s); and a Huffington Post article, published online on October 30, 2013, by Julie Spira, entitled "NYU Tisch Gala in Beverly Hills Honors Oliver Store and Liza Chasin." ECF Nos. 39-41, 63 (Plaintiff's Supplemental Motion Requesting Judicial Notice Pursuant to Federal Rule of Evidence 201).

Defendants oppose these requests because Plaintiff did not show "how any of the documents are relevant to the proceeding." ECF No. 55 (Declaration of Susan D. Friedfel in Opposition to Plaintiff's Supplemental Motion Requesting Judicial Notice Pursuant to Federal Rule of Evidence 201).

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* A request for judicial notice can be entertained "at any stage of the proceeding." Fed. R. Evid. 201(f). Accordingly, a request for judicial notice is entirely appropriate when the facts to be judicially noticed are relevant to a pending motion, such as the instant motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002) ("Generally, in deciding a motion to dismiss, the court is limited to considering the facts alleged in the complaint, documents attached to the complaint or incorporated in it by reference, and matters of which the court may take judicial notice.").

Of course, a court can only sensibly take judicial notice of facts relevant to the matters before the court. *See United States v. Byrnes*, 644 F.2d 107, 112 (2d Cir. 1981) (finding district court did not abuse discretion in refusing to take judicial notice of regulations that were irrelevant to case); *United States v. Bleznak*, 153 F.3d 16, 21 n.2 (2d Cir. 1998) (denying as moot a motion to take judicial notice of facts "not relevant to our disposition of this appeal"); *see also* § 5104 *Facts Judicially Noticeable; Indisputability*, 21B Fed. Prac. & Proc. Evid. § 5104 (2d ed.) ("Although judicial notice is not 'evidence' so Rule 402 does not apply and Rule 201 does not require the noticed fact to be 'relevant', courts would be foolish to take judicial notice of an irrelevant fact.").

Here, Plaintiff's requests on their own fail to demonstrate the relevance of these materials. However, to the extent that Plaintiff's legal arguments on the motions decided herein clarify the relevance of the facts contained within these materials, the Court is willing to take judicial notice of those facts. Thus, insofar as the above-listed items are relevant to the analysis

of the motions decided herein, *see infra* Section II, Plaintiff's request for judicial notice of them

is GRANTED. Otherwise, Plaintiff's request for judicial notice is DENIED.

## II. Motion to Dismiss

### A. *Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*

Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Second Circuit has explained

that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris*

*v. Mills,* 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that

'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 129

S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-

pleaded factual allegations, a court should assume their veracity and . . . determine whether they

plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set

forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v.*

*Burch,* 494 U.S. 113, 118 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir.

2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would

entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Hertz*

*Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

While the statute of limitations is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir. 1998) (citing *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989)). Thus, a 12(b)(6) motion raising a statute of limitations defense "may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir. 1992)). As such, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [statute of limitations] defense." *Id.*

For the reasons that follow, the Court agrees with the Defendants' motions to dismiss.

B.      *Analysis.*

1.      *Fraud Claims*

Plaintiff first alleges common-law fraud, as well as statutory claims under the Federal False Claims Act ("FCA") and N.Y. General Business Law § 349, contending principally that Defendants' refusal to acknowledge his academic credentials by declining his offers to speak on campus has left him unemployed, unable to take advantage of NYU's Loan Repayment Assistance Program, and, therefore, unable to resolve his indebtedness to the government. Am. Compl. at 15-16.

*a.     Relevant Standards*

In New York, a claim of common-law fraud has the following four elements: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)) (internal quotation marks omitted). "In a federal diversity action, such a claim must be pleaded with particularity." *Premium Mortg.*, 583 F.3d at 108 (citing Fed. R. Civ. P. 9(b)).

The statute of limitations for New York common-law fraud is "six years from accrual or two years from actual or imputed discovery." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 309-10 (S.D.N.Y. 2014) (citing N.Y. C.P.L.R. § 213(8) (McKinney 2013)), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016). The six-year period runs from "the commission of the fraud." *Id.* (quoting *Piedra v. Vanover*, 174 A.D.2d 191 (2d Dep't 1992)).

To state a FCA claim, Plaintiff "must show that a defendant (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 195 (S.D.N.Y. 2016). The purpose of this provision is to "facilitate restitution to the federal government when money is fraudulently taken from it." *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014) (citations omitted). A private individual may bring a *qui tam* action for violation of this statute in the name of the Government. *Id.*

As with all actions alleging claims of fraud, a party asserting a FCA claim "must state with particularity the circumstances constituting fraud or mistake." *Id.* (quoting Fed. R. Civ. P. 9(b)). This typically means a fraud complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentations. *Camp v. N.Y. Univ.*, No. 86-CV-1431 (SWK), 1988 WL 18867, at *1 (S.D.N.Y. Feb. 22, 1988) (citing *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

The statute of limitations for an FCA claim is defined as follows:

> (b) A civil action under section 3730 may not be brought –
> (1) more than 6 years after the date on which the violation of section 3729 committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, *but in no event or more than 10 years after the date on which the violation is committed.*

31 U.S.C. § 3731 (emphasis added).

A claim under N.Y. General Business Law § 349 requires proof of "three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000).

A three-year statute of limitations applies to claims arising under Section 349. *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001). A Section 349 claim accrues when "plaintiff has been injured by a deceptive act or practice violating section 349[.]" *Id.* at 1083.

>        *b.*        *Plaintiff fails to state a claim.*

Plaintiff's common-law fraud claim is insufficiently articulated and, in any event, barred by the six-year statute of limitations. The misrepresentation or omission that Plaintiff alleges is

entirely unclear. However, Plaintiff pleads that he was informed that he was assuming student loan debt in exchange for degrees, and that he, in fact, received these degrees. To the extent Plaintiff is alleging that Defendants misrepresented the value of the degrees he received, Plaintiff's pleading is entirely unspecific with regard to the time, place or contents of any alleged false statements in that regard, or examples as to how Plaintiff relied to his detriment on those statements. *E.g., Camp*, 1988 WL 18867, at *2 (dismissing similar claim based on lack of particularity).[4]

But even had this theory been more adequately pleaded, New York courts have not hesitated to dismiss fraud claims at the pleading stage based on a law school's allegedly inflated statements about the value of their degrees. *See, e.g., Gomez-Jimenez v. N.Y. Law Sch.*, 943 N.Y.S. 834, 851-54 (N.Y. Sup. Ct. 2012), *aff'd*, 956 N.Y.S.2d 54 (N.Y. App. Div. 1st Dep't 2012) (finding materiality and reliance elements of fraud claim insufficiently pleaded because, among other reasons, law school graduates were well-equipped to do independent research regarding value of degree, and challenges in legal employment market were widely known). Indeed, any *justifiable* reliance on Plaintiff's part is highly speculative, and certainly not adequately pleaded here. *Id.* at 851 ("[T]he reasonable consumer of legal education must realize that these omnipresent realities of the market obviously trump any allegedly overly optimistic claims in their law school's marketing materials. Under New York law, frustration and disappointed expectations do not of themselves give a rise to a cognizable cause of action." (citations omitted)).[5] For these numerous reasons, Plaintiff's common-law fraud claim fails.

---

[4] Plaintiff also alludes to Nelson's statement that NYU's LRAP could be available to him to assist in repaying his loans, like all NYU alumni. *See* Am. Compl. at 9. However, Plaintiff does not allege NYU failed to make this program available to him. Rather, it reasonably appears from the facts in the complaint that Plaintiff was ineligible because he was not employed.

[5] To the extent Plaintiff claims that NYU promised that it would obtain employment for him, such an allegation, even assuming its truth, would similarly fail, as that is a promise that Plaintiff could not have justifiably relied upon.

Moreover, any hypothetical fraud claim by Plaintiff would necessarily rely on representations made *during* Plaintiff's schooling at NYU, which concluded well over six years ago, and thus would be barred by the relevant statute of limitations. *See, e.g., Fromer v. Yogel*, 50 F. Supp. 2d 227, 245 (S.D.N.Y. 1999) ("To the extent [common-law fraud] allegations in the Complaint rely on statements made prior to the six-year statute of limitations applicable under New York law, see C.P.L.R. § 213, the motions to dismiss the claim for common law fraud, as to those statements, are granted . . .").

Plaintiff appears to argue that his visits to NYU in 2001, 2003, and 2007 might constitute a basis for equitable tolling of the relevant statutes of limitations. *See* Pl's Mem. at 9. Although Plaintiff does not explicitly invoke the doctrine of equitable tolling, a discussion is nonetheless warranted. "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). Here, as an initial matter, Plaintiff himself admits he "contemplated" filing suit regarding his student loan debt "years before" but did not do so until receiving a phone call from his former companion who made unspecified threats against him. Am. Compl. at 3-4. This on its own strongly suggests that Plaintiff has been dilatory in exercising his rights. In any event, it is not clear how Plaintiff's visits to NYU should toll the statutes of limitation applicable to his fraud claims, or any of his other claims, for that matter. These visits did not prevent Plaintiff from exercising his rights, much less in any "extraordinary way." As alluded to above, Plaintiff had to be on notice of the limitations of NYU's Loan Repayment Assistance Program – and any misrepresentations on Defendants' part – by the time he became unemployed shortly after his graduation on or around 2001. Defendants are not

alleged to have made a representation to Plaintiff during these visits that caused Plaintiff to forego pursuing his fraud claims. But even had Defendants made such a representation, the last alleged visit was in 2007, which still does not satisfy the applicable statute of limitations. This is plainly not the "rare and exceptional" case warranting equitable tolling.

As to Plaintiff's claim under N.Y. General Business Law § 349, the amended complaint is unclear as to what program or practice of Defendants that Plaintiff is challenging as misleading. If the alleged practice is misleading students regarding the value of the NYU degree conferred to them, such a claim would fail for the same reasons that Plaintiff's common-law fraud claim does. Or, to the extent the alleged misrepresentation is some component of Defendant's offer of a loan repayment assistance program, Plaintiff merely alleges that this program was offered to him. He does not articulate *how* Defendants misrepresented that program to him, but simply that he has not been able to take advantage of it, presumably because of his ongoing unemployment. Thus, this is exactly the type of generalized allegation that is insufficient to withstand a motion to dismiss, because it does not give "fair notice of what the claim is and the grounds upon which it rests." *Sforza v. City of New York*, No. 07-CV-6122 (DLC), 2009 WL 857496, at *12 (S.D.N.Y. Mar. 31, 2009) (quoting *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006)) (internal quotation marks omitted). In addition, even had the misleading practice been more adequately pleaded, the Court would have to engage in "naked speculation" to calculate damages for a claim of this nature. *Gomez-Jimenez*, 942 N.Y.S.2d at 851 (dismissing Section 349 claim in part because measuring damages "based on the difference in value between a degree which guarantees a good legal job, as defined by plaintiffs, and one that does not, against the background of the remote, supervening impact of the Great Recession, would require the court to engage in naked speculation."). Thus, because, among other reasons,

the amended complaint alleges no misrepresentation (even when read most generously), Plaintiff has failed to state a claim under Section 349.

For similar reasons, Plaintiff's Section 349 claim is barred by the three-year statute of limitations. Plaintiff realized his injuries shortly after graduation in 2001, when he lost his job at Clemson University and struggled to obtain employment with his NYU degree. His Section 349 claim is, accordingly, time-barred.

Finally, Plaintiff fails to state a claim under the FCA for two reasons. First, Plaintiff does not allege that Defendants made a false claim to the government. The crux of Plaintiff's allegations is that he accrued student loans while receiving his degrees at NYU on the basis of some promises that Defendants made *to him* (which are, as discussed above, insufficiently stated). Second, the statute of limitations clearly bars such a claim. Even if Plaintiff did not discover the basis for his FCA claim until 2015, a civil action must be brought within 10 years of the alleged violation. *See* 31 U.S.C. § 3731(b)(2) ("A civil action under section 3730 may not be brought . . . more than 3 years after the date when facts material to the right of action are known or reasonably should have been known . . . but in no event more than 10 years after the date on which the violation is committed." (emphasis added)). Here, because Plaintiff bases his FCA claim on the accrual of student loan debt well over ten years before the commencement of this action, the statute of limitations bars his FCA claim.

For these reasons, each of Plaintiff's fraud claims must be dismissed.

16

### 2. *Deprivation of Rights Under Color of Law*

Plaintiff claims that Defendants' facilitation of his student loan indebtedness deprived him of his civil rights under color of law (specifically his right to be free from involuntary servitude), pursuant to 18 U.S.C. § 242. Am. Compl. at 16-17.

#### a. *Relevant Standards*

18 U.S.C. § 242 is a criminal statute that provides, in pertinent part, that:

> [w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both..."

*Id.*

Accordingly, 18 U.S.C. § 242 "makes it criminal to act (1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997).

The applicable statute of limitations provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

b.      *Plaintiff Fails to State a Claim.*

Plaintiff's 18 U.S.C. § 242 claim must be dismissed for two independent reasons. First, the claim arises under a criminal statute that does not provide a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Plaintiff does not appear to dispute this.

Second, even if a private citizen could enforce a Section 242 claim, Plaintiff's claim would be barred by the statute of limitations applicable to Section 242, which defines a five-year limit on such enforcement. Here, Plaintiff alleges that Defendants facilitated his loan indebtedness, and resulting involuntary servitude, while he was enrolled at NYU well over a decade ago. Thus, Plaintiff's Section 242 claim is barred by the five-year statute of limitations.

3.      *Conspiracy to Violate the Thirteenth Amendment*

Plaintiff claims that Defendants have violated his civil rights, under 42 U.S.C. § 1983, by "entangl[ing]" him in debts that he cannot discharge through bankruptcy, thereby forcing him to "pursue undervalued, underpaid labor" to pay off his debts, in violation of the Thirteenth Amendment to the Constitution. Am. Compl. at 17-18.

a.      *Relevant Standards*

42 U.S.C. § 1985 establishes liability for conspiracy to violate civil rights laws. A conspiracy claim must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Bodkin v. Garfinkle*, 412 F. Supp. 2d 205, 214 (E.D.N.Y. 2006) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)). "The Second Circuit has held clearly that a complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Id.* (citing, *inter alia*, *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999)).

There is no federal statute of limitation for claims arising under 42 U.S.C. § 1983. *E.g.*, *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 233 (E.D.N.Y. 2015) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)). Accordingly, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (internal quotation marks omitted). Section 214 of the New York Civil Practice Law and Rules defines a three-year statute of limitations "to recover upon a liability, penalty or forfeiture created or imposed by statute." *Id.* (quoting N.Y. C.P.L.R. § 214(2)) (internal quotation marks omitted). The same three-year statute of limitations applies to Section 1985 claims as well. *Blankman v. Cty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y. 1993) (surveying cases), *aff'd*, 14 F.3d 592 (2d Cir. 1993).

"Federal law determines when [Section 1983] claims accrue, and the Second Circuit has held that accrual of a Section 1983 claim occurs when the plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). In the context of a conspiracy to commit a civil rights violation, most courts reject the argument that the statute of limitations should not accrue until the completion of the last overt act, and "appl[y] the theory only under compelling circumstances." *Blankman*, 819 F. Supp. at 207 (quoting *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989)).

   *b.*  *Plaintiff Fails to State a Claim.*

Plaintiff's claim of conspiracy to violate his Thirteenth Amendment rights is wholly conclusory, and for this reason alone, must be dismissed. Plaintiff appears to suggest that, by his incurring student loans to pay for his education and his being unable to discharge those debts through bankruptcy, the federal government and NYU have conspired to enslave him to his debt. He bases this on his own "broad[]" reading of the Thirteenth Amendment. Pl's Mem. at 7-8. But, Plaintiff fails to specify any factual basis for this alleged conspiracy. And, even setting aside the deficient allegations of a conspiracy and taking Plaintiff's Thirteenth Amendment claim on its own, the Ninth Circuit has rejected Plaintiff's precise argument as "patently specious." *In re Craig*, 579 F.3d 1040, 1047 (9th Cir. 2009).

In any event, the three-year statute of limitations bars Plaintiff's claim. Plaintiff pleads prolonged unemployment and indebtedness that has caused detriment to his mental health. He admits that he has been aware of these claims for some time, and has been "contemplating" bringing action. As such, the Court is satisfied that Plaintiff has, for some time well in excess of three years, been aware of the injuries resulting from any conspiracy to place him into debt on Defendants' part.

For these independent reasons, Plaintiff fails to state a claim that Defendants violated his civil rights.

### 4. Conspiracy to Deprive Plaintiff of Rights[6]

Plaintiff alleges that he has learned from the Internal Revenue Service that his family's tax information has been shared with the New York City Department of Finance, and that this "may be related to Plaintiff's indebtedness facilitated by Defendants, since indebtedness is Plaintiff's only on-going connection to New York[.]" Am. Compl. at 18-19. He claims that Defendants have an interest in obtaining his family's IRS income related to "student debt management or credentialing[,]" but does not allege any other involvement on Defendants' part. *Id.* at 19. Plaintiff claims that this alleged sharing of information between the IRS and the Department of Finance deprives him of his "Fourth Amendment constitutional right to privacy" and potentially exposes the City of New York to liability under New York Civil Rights Law § 50, 26 U.S.C. § 6103, and 42 U.S.C. § 1983. *Id.*

#### a. Relevant Standards

New York law provides no "substantive tort of conspiracy." *SRW Assocs. v. Bellport Beach Prop. Owners*, 517 N.Y.S.2d 741, 744 (N.Y. App. Div. 2d Dep't 1987). Conspiracy allegations merely serve to "connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of NY, Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986). Thus, allegations of an underlying tort are an essential component of a sufficiently pleaded claim of civil conspiracy. *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 678 N.Y.S. 1, 3 (N.Y. App. Div. 1st Dep't 1998).

---

[6] Plaintiff's opposition fails to address the infirmities raised in Defendants' motion to dismiss as to this claim and all claims addressed below. *See infra* Sections II.B.4-9. In addition, Plaintiff's proposed Second Amended Complaints expressly "withdraw[]" his claims for Conspiracy to Violate the Thirteenth Amendment, Breach of Implied Warranty, and Negligent Misrepresentation. *See* [Proposed] Second Amended Complaint at 40 (ECF No. 54-1); Second Amended Complaint at 39 (ECF No. 85). The Court thus considers all subsequently addressed claims as abandoned. *See, e.g., Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (surveying cases). However, for the reasons addressed below, even had Plaintiff not abandoned these claims, each would fail on the merits as well.

###### b. *Plaintiff Fails to State a Claim.*

Here, Plaintiff fails to allege an actionable tort underlying his conspiracy claim. His claim appears to be based on a conspiracy to violate his Fourth Amendment rights; however, the Court is unable to locate any authority suggesting that a conspiracy to violate an individual's Fourth Amendment rights is actionable under New York law. Accordingly, Plaintiff's conspiracy claim must be dismissed for failure to sufficiently allege an underlying tort.

Additionally, Defendants argue that this claim is time-barred. Defendants acknowledge that, without an allegation of an underlying tort, the question is less clear. Nonetheless, they assert that the claim is time-barred under the statutes of limitations applicable to civil conspiracies under federal law. In light of the lack of clarity as to the underlying tort alleged (and, by extension, the accrual of Plaintiff's conspiracy claim), and the Court's obligation to allow Plaintiff "all reasonable inferences *from the facts alleged*" defeating the statute of limitations defense, the Court declines to dismiss this cause of action on this alternative basis. *McKenna*, 386 F.3d at 436 (emphasis added).

##### 5. *Negligent Misrepresentation*

Plaintiff alleges that Defendants made negligent misrepresentations regarding his professional degrees under the Securities Act of 1933, 15 U.S.C. § 77l. Am. Compl. at 19-20. Specifically, Plaintiff claims Defendants misrepresented the "value of Plaintiff's investments in his professional degrees" and failed to inform him that Defendant could sever ties with him and withdraw Plaintiff's access to Defendants' career services. *Id.*

*a.*     *Relevant Standards*

"Liability under Section 12(a)(2) arises when a person offers or sells a security by means of a prospectus or oral communication that includes a material misrepresentation or omission." *In re Royal Bank of Scotland Grp. plc Sec. Litig.*, No. 09-CV-300 (DAB), 2012 WL 3826261, at *6 (S.D.N.Y. Sept. 4, 2012) (citing 15 U.S.C. § 77l(a)(2)), *aff'd sub nom. Freeman Grp. v. Royal Bank of Scotland Grp. PLC*, 540 F. App'x 33 (2d Cir. 2013). It only follows that a misrepresentation or omission in connection with a registered securities offering is an indispensable component of such a claim. *See Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080, 1095 (S.D.N.Y. 1977).

Securities Act claims "must be 'brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.'" *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 640 (S.D.N.Y. 2017) (quoting 15 U.S.C. § 77m), *reconsideration denied,* No. 16-CV-4923 (VM), 2017 WL 3208042 (S.D.N.Y. July 28, 2017); *see Merck & Co. v. Reynolds*, 559 U.S. 633, 656 (2010) (Stevens, J., concurring in part and concurring in the judgment) (establishing the one-year statute of limitations for Securities Act claims).

### b.     *Plaintiff Fails to State a Claim.*

Plaintiff has failed to state a claim under the Securities Act. Here, among other infirmities (including that Plaintiff fails to allege a specific misrepresentation on Defendants' part, *see supra* Section II.B.1.b), perhaps most crucial is that NYU is not alleged to have sold Plaintiff a registered security "by means of a prospectus or oral communication." An academic degree hardly qualifies as a security under the meaning of the statute, as that term has typically been construed. *See, e.g., Colonial Realty Corp. v. Brunswick Corp.*, 257 F. Supp. 875, 879 (S.D.N.Y. 1966) (suggesting that this term encompasses "only the securities issued and sold pursuant to [a] registration statement and prospectus"). For this reason, Plaintiff fails to state a claim under the Securities Act.

In any event, for many of the reasons discussed above, the discovery of any hypothetical misrepresentation could not possibly be construed as falling within the one-year statute of limitations applicable to this type of claim.

### 6.     *Breach of Contract*

Plaintiff alleges that he made an enforceable contract with Nelson, which included NYU School of Law and NYU Graduate School of Arts and Science. Am. Compl. at 20-21. Plaintiff does not specifically provide the details of the agreement. However, Plaintiff alleges that he fully performed the contract when he completed his dissertation and passed his bar exam, but that defendants failed to perform, because they have refused to assist Plaintiff in validating his credentials "since 2001." *Id.* He is indebted as a result. *Id.*

*a.     Relevant Standards*

To make out a breach of contract claim under New York law, Plaintiff must demonstrate: (1) there was an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. *See 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 42 (2d Cir. 2005).

New York's statute of limitations for breach of an express or implied contract is six years. *See* N.Y. C.P.L.R. § 213(2). Such a cause of action "usually accrues, and the limitations period begins to run, upon breach." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 260 (S.D.N.Y. 2008) (citing, *inter alia, Huang v. Siam Commercial Bank Pub. Co.*, 247 F. App'x. 299, 301 (2d Cir. 2007)).

*b.     Plaintiff Fails to State a Claim.*

Plaintiff's breach of contract claim, even most generously read, is foreclosed by the lack of specificity as to the agreement between the parties, as well as the relevant statute of limitations.

"New York courts have suggested that a student can sue a school for breach of contract." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) (citing, inter alia, *Olsson v. Board of Higher Educ.*, 402 N.E.2d 1150 (1980)). "When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks." *Id.* (citing *Carr v. St. John's Univ.*, 231 N.Y.S.2d 410, 413 (N.Y. App. Div. 2d Dep't 1962)). Implicit is that the "university must act in good faith in dealing with the student," while the student "must fulfill her end of the bargain by satisfying the university's academic requirements and complying with its procedures if she hopes to receive her degree." *Id.* (citing *Olsson*, 402 N.E.2d 1150).

But, the amended complaint does not allege that NYU breached its contract with Plaintiff in failing to confer or thereafter recognize Plaintiff's degrees. Rather, Plaintiff appears to be alleging that NYU breached their contract by not obtaining employment for him, or, at the least, making affirmative efforts to market him or otherwise assist in his employment search. However, even if Plaintiff expected such assistance, Plaintiff does not allege that there was ever an agreement, express or implied, to do so. *See, e.g., Rodriguez v. N.Y. Univ.*, No. 05-CV-7374 (JSR), 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.") (quoting *Gally*, 22 F. Supp. 2d at 206-07). In any event, Plaintiff himself confirms that he did obtain the precise employment that he desired upon graduation upon consultation with Nelson, and thus received what he seems to be alleging that he bargained for. That is, of course, speculative, and therein lies the most crucial problem: Plaintiff fails to articulate the nature of the agreement that was breached.

Another, independent basis for dismissal of this claim is even clearer: the claim is, like many of Plaintiff's other claims, time-barred. Plaintiff specifically claims that the breach occurred in 2001, when NYU initially refused to "validate his credentials." Am. Compl. at 21. The claim having, therefore, accrued in 2001, this allegation is at odds with the six-year statute of limitations applicable to breach of contract claims under New York law. For this reason, too, Plaintiff's breach of contract claim fails.

7.      *Breach of Implied Warranty*

Plaintiff alleges, in essence, that Defendants breached an implied warranty associated with his degree, because his degree has not resulted in any "economic advantage" to him. Am.

Compl. at 21-22.  He asserts these claims pursuant to New York Uniform Commercial Code § 2-725 and California Commercial Code § 2314-2316.[7]

<em>a.</em>    <em>Relevant Standards</em>

Under the New York Uniform Commercial Code, "[t]o establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual, and reasonably foreseeable manners." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420-21 (S.D.N.Y. 2011) (citing, *inter alia, O'Sullivan v. Duane Reade, Inc.*, 910 N.Y.S.2d 763, at *6 (N.Y. Sup. Ct. 2010)).

Under the California Commercial Code, "[t]he core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1114 (S.D. Cal. 2017) (quoting *Isip v. Mercedes-Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 700 (Cal. Ct. App. 2007)) (internal quotation marks omitted).  Thus, "[a] breach occurs if the product lacks even the most basic degree of fitness for ordinary use." *Id.* (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)).

Under each state's laws, these claims are governed by a four-year statute of limitations. *See Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001); *Nat'l Union Fire Ins. Co. v. Dassault Falcon Jet Corp.*, 263 F. App'x 604, 607 (9th Cir. 2008).  While a New York breach of warranty action must be commenced within four years of the alleged breach, California law typically requires that such an action be commenced within four years of the

---

[7] The Court is skeptical that California's Commercial Code would apply in this action, but nonetheless assumes, for the sake of argument, that it does.

tender of delivery. N.Y. U.C.C. Law § 2-725; *Dassault Falcon*, 263 F. App'x at 607 (citing Cal. Com. Code § 2725).

b.     *Plaintiff Fails to State a Claim.*

Whether under California or New York commercial codes, Plaintiff fails to state a claim for breach of implied warranty. Any contractual relationship formed between the parties related primarily to the provision of services, not goods, and, in any event, the applicable statutes of limitations would bar Plaintiff from bringing a warranty claim.

Under New York law, Plaintiff's degree is not a "good" or product as contemplated by the UCC. Under the UCC a "good" or product is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." N.Y. U.C.C. Law § 2-105(1). The California Commercial Code contains a virtually identical definition. *See* Cal. Com. Code § 2105. A diploma does not remotely fall within the scope of these definitions, but is, at best, akin – but not perfectly analogous – to a "general intangible," which is not encompassed within the definition of a "good." *See, e.g., Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 431 (2d Cir. 1995). The poor fit of these definitions underscores what the Court must now conclude: any contract between Plaintiff and Defendants appears to have related to services, not goods, and thus a claim does not lie under the UCC provision that Plaintiff cites. *See, e.g., CVD Equip. Corp. v. Taiwan Glass Indus. Corp.*, No. 10-CV-573 (JPO), 2014 WL 6057395, at *5 (S.D.N.Y. Nov. 13, 2014) (explaining that UCC applies to transactions and goods, and where sale of items is "merely incidental" to provision of services, the contract is one for services) (quoting *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 742 (2d Cir. 1979)).

But even if Plaintiff's degree could be considered an item to which the UCC or California Commercial Code apply, the four-year statute of limitations under each law would bar such a claim. Plaintiff received his degrees in 2001, and has had difficulty obtaining employment since shortly thereafter. Plaintiff seems to allege that at that point he realized his degree "was not reasonably fit for its intended purpose." *Porrazzo*, 822 F. Supp. 2d at 420-21. Thus, whether the standard for accrual is at time of delivery (as in California) or time of breach (as in New York), Plaintiff's claims are time-barred.[8]

### 8. *Respondeat Superior*

Plaintiff claims that NYU is liable for the conduct of its employee, Dr. Nelson, under the doctrine of respondeat superior. Am. Compl. at 22-23.

#### a. *Relevant Standards*

Under the principle of respondeat superior, New York law provides that "an employer may be held liable for the tortious acts committed by an employee acting within the scope of his or her employment." *Rodriguez v. Cty. of Westchester*, No. 15-CV-9626 (PAE), 2017 WL 118027, at *13 (S.D.N.Y. Jan. 11, 2017) (citing, *inter alia*, *Riviello v. Waldron*, 391 N.E.2d 1278, 1280-81 (N.Y. 1979)). "To state a claim for respondeat superior, a plaintiff must plead facts demonstrating that the tortious conduct that caused the injury was committed within the scope of the employee's employment." *Rodriguez*, 2017 WL 118027, at *13 (citing *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015)).

---

[8] Despite withdrawing this claim, Plaintiff continues to argue for tolling of the statute of limitations of his U.C.C. claim on the ground that he has "maintained reasonably regular contact" with his loan servicers. Pl's Mem at 19-20. The Court is unclear as to how this might constitute a basis for tolling, and Plaintiff cites no authority in support of his claim.

*b.     Plaintiff Fails to State a Claim.*

This cause of action must be dismissed as insufficiently stated. Plaintiff fails to allege

any tort on the part of Nelson for which NYU should be held liable. Without such clarity,

Plaintiff does not adequately state a respondeat superior claim.

Additionally, Defendants argue that this claim is time-barred, as the statutes of limitations

for negligent and intentional torts are no more than three years from accrual. However, in the

absence of more specific allegations with regard to the tortious conduct alleged, much like

Plaintiff's conspiracy claim, the Court is unable to discern whether Plaintiff has timely stated a

respondeat superior claim. In light of this deficiency, and the Court's obligation to allow

Plaintiff "all reasonable inferences *from the facts alleged*" defeating the statute of limitations

defense, the Court declines to dismiss this cause of action on this alternative basis. *McKenna*,

386 F.3d at 436 (emphasis added).

*9.     Restraint of Trade*

Plaintiff alleges that Dr. Nelson's "withhold[ing] information from Plaintiff" restrained

Plaintiff from engaging in "several trades," in violation of the Sherman Antitrust Act, 15 U.S.C.

§ 1. Am. Compl. at 23.

*a.     Relevant Standards*

To establish a Sherman Act violation, a plaintiff "must first establish a combination or

some form of concerted action between at least two legally distinct economic entities." *Capital

Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993).

Then, a plaintiff must "proceed to demonstrate that the agreement constituted an unreasonable

restraint of trade either per se or under the rule of reason." *Id.* Concerted action is defined by

two defendants' "conscious commitment to a common scheme designed to achieve an unlawful

objective." *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 619 (S.D.N.Y. 2013) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761, 764 (1984)) (internal quotation marks omitted). To then demonstrate an unreasonable restraint of trade, plaintiffs must demonstrate "either (1) an actual adverse effect on competition, such as reduced output, or (2) "that defendants possess the requisite market power and thus the capacity to inhibit competition market-wide, plus some other grounds to believe that the defendant's behavior will harm competition market-wide, such as the inherent anticompetitive nature of defendant's behavior or the structure of the interbrand market." *Id.* (quoting *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995)) (internal quotation marks omitted).

A claim under the Sherman Act has a four-year statute of limitations. *See* 15 U.S.C. § 15b. This accrues "when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).

> b.     *Plaintiff Fails to State a Claim.*

As the above discussion of the case law on its own reflects, Plaintiff fails to allege a restraint on trade under the meaning of the Sherman Act. Plaintiff's sole allegation that Nelson withheld information – presumably regarding Plaintiff's employability and ability to pay his loans upon graduation – simply does not fall within even the outermost bounds of either the concerted action or the "restraint of trade" contemplated by the statute that Plaintiff cites. Even if it did, Plaintiff fails to allege, in even a conclusory manner, the broader market effects tending to demonstrate unreasonableness in his complaint.

With respect to the four-year statute of limitations, Plaintiff makes no allegations regarding Nelson's withholding information from him subsequent to Plaintiff's time at NYU.

Rather, Nelson is only alleged to have given Plaintiff advice during Plaintiff's time attending NYU, and thus any Sherman Act violation had to have occurred during that period. Plaintiff graduated from NYU in 2001. Thus, Plaintiff's claim had to have been filed within four years of 2001 to be timely. As such, his Sherman Act claim is also time-barred.

### III.  Leave to Amend and Join Parties

Plaintiff has made multiple requests for leave to file a Second Amended Complaint. *See* Pl's Mem. at 1; Memorandum of Law in Support of Plaintiff's Motion for Change of Venue ("Pl's Venue Mem.") at 2 (ECF No. 44); Letter dated Dec. 21, 2017 (ECF No. 86); *see also* Order (ECF No. 87) (construing letter as motion for leave); Letter dated Jan. 29, 2018 (ECF No. 96) (offering to withdraw motion to disqualify if Court grants leave to amend); Letter dated Feb. 1, 2018 (ECF No. 100) (same). He has filed proposed complaints with his opposition to Defendant's Motion to Dismiss, *see* [Proposed] Second Amended Complaint (ECF No. 54-1), as well as with his subsequent Motion for Leave to Amend, *see* Second Amended Complaint (ECF No. 85). For the reasons set forth below, the Court denies each of Plaintiff's motions.

*A.  Leave to Amend to Remove NYU School of Law and Nelson as Defendants*

Plaintiff first seeks leave to amend his complaint to remove NYU School of Law and Nelson as Defendants. Pl's Venue Mem. at 2. He argues that, should the Court allow him to do so, a venue transfer would be appropriate because NYU would be the sole defendant and NYU resides in the Central District of California. Defendants oppose, arguing that venue would still be inappropriate if NYU was the sole defendant. The Court agrees with Defendants and denies leave to amend for this reason.

A party may amend its complaint once without leave of court up to 21 days after the service of either a responsive pleading or various Fed. R. Civ. P. 12 motions. *See* Fed. R. Civ. P.

15(a)(1). After that time has expired, any amendment requires the consent of the opposing parties or leave of court. *See* Fed. R. Civ. P. 15(a)(2). A court should "freely give leave when justice so requires." *Id.* The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Courts typically grant requests to amend under Rule 15(a). *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). It is, however, ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 182). A court may deny amendments to the complaint if they are futile or if they would unfairly prejudice the opposing parties. *See Aetna Casualty & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (citations omitted). An amendment is considered futile if, for example, it cannot withstand a motion to dismiss. *See Ricciuti*, 941 F.2d at 123.

As an initial matter, Plaintiff does not need leave of this Court to remove NYU School of Law and Nelson as parties; rather, he simply may dismiss them on his own volition, even without a court order, at this early stage of litigation. *See* Fed. R. Civ. P. 41(a)(1).

In any event, as discussed below, *see infra* Section IV, NYU is not subject to the Central District of California's personal jurisdiction with respect to this case, and therefore venue in the Central District of California would be inappropriate even if NYU were the sole defendant. *See* 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . .").

Therefore, the Court denies leave to amend on this basis. *See, e.g.*, *Alphas v. City of N.Y. Bus. Integrity Comm'n*, No. 15-CV-03424 (ALC), 2017 WL 1929544, at *4 (S.D.N.Y. May 9, 2017) ("Although a district court 'should freely grant leave to amend,' a district court may deny leave to amend where there is no merit in the proposed amendments or amendment would be futile." (quoting *Hunt v. Alliance North Am. Gov't Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

*B. Subsequent Requests for Leave to Amend or Join Parties*

Since the filing of Defendants' motion to dismiss, Plaintiff has twice sought leave to amend his complaint. First, Plaintiff appended an amended complaint to his Opposition to Plaintiff's Motion to Dismiss. Later, Plaintiff filed an additional complaint that, among other things, attempts to add his husband, Jeremiah T. Malumaleumu, as a Plaintiff, and a nonparty loan servicer, Nelnet, Inc., as a defendant.[9] He has fashioned this as a motion to join these parties as well as a motion for leave to file a Second Amended Complaint. *See* Plaintiff's Memorandum of Law (ECF No. 84).

However, Plaintiff does not specify a cause of action that Mr. Malumaleumu would assert against Defendants. Additionally, Plaintiff fails to state any legal claims against Nelnet (despite being on notice of the necessity of doing so), leading the Court to conclude that granting leave to amend to add either Malumaleumu or Nelnet as parties would be futile. Finally, and most importantly, neither of Plaintiff's proposed pleadings even addresses, let alone cures, most of the infirmities raised by Defendants in their motion to dismiss, despite being on notice of those

---

[9] Plaintiff has not provided the Court with a summary of what has changed between each of his proposed amendments besides the addition of these parties. *See* Letter dated Dec. 21, 2017. However, the Court has compared both proposed complaints. In addition to some ostensibly immaterial cosmetic changes (*e.g.*, alterations of headings and organization), Plaintiff has added a preliminary injunction against Nelnet to his requested relief, but has otherwise left the factual allegations, summary of his causes of action, and requested relief the same in every material way. *Compare* Second Amended Complaint at 40 (ECF No. 85), *with* [Proposed] Second Amended Complaint at 41 (ECF No. 54-1). As such, the references to Plaintiff's [Proposed] Second Amended Complaint in the analysis that follows are to Plaintiff's *second-filed* [Proposed] Second Amended Complaint (ECF No. 80).

deficiencies for some time. Many of the claims articulated in the proposed complaints are worded identically to the claims in Plaintiff's First Amended Complaint. As such, the Court concludes that leave to amend would be futile, and declines to grant Plaintiff leave to file either of his proposed amended complaints.

Applying the standard governing motions for leave to amend recited above, it is apparent that Plaintiff's amendments would be futile. First, Plaintiff had not articulated a valid reason for adding his husband as a party. Plaintiff has not articulated a formal claim that his husband asserts against Defendants, nor added has Plaintiff supplemented his pleading with additional facts remotely suggesting that Defendants have inflicted a wrong against his husband, much less a legally cognizable one. In fact, Plaintiff and Mr. Malumaleumu became domestic partners only in 2011, well after Plaintiff had graduated from NYU. *See* Plaintiff's Memorandum of Law at 5. The primary basis that Plaintiff asserts for adding his husband as a plaintiff is that his loan servicer considers his husband's income in calculating his monthly student loan payment obligation. *Id.* at 4. He suggests that this Court must resolve "a question about the enforceability of California community property law of which Louis Anthes and Jeremiah Malumaleumu have availed themselves to execute, in part, written and oral agreements protecting the non-indebted spouse from Plaintiff's debts." *Id.* These matters, however, have no apparent relation to Plaintiff's claims against any of the existing defendants. Plaintiff has wholly failed to state a cognizable claim against defendants on behalf of his husband, and the Court thus perceives no basis for amendment.

Plaintiff's attempt to add his loan servicer as a party also falls short. Instead of asserting a legal cause of action against Nelnet, Plaintiff outlines the relief that he seeks from the Court with respect to Nelnet. *See* [Proposed] Second Amended Complaint at 40 (requesting a

35

preliminary injunction against Nelnet to, among other things, enjoin Nelnet from collecting on

Plaintiff's loan obligations). However, as the Court has already informed Plaintiff (*see* Joinder

Order at 3), the Court cannot award a legal remedy without a legal claim entitling Plaintiff to the

relief sought. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain .

. . a short and plain statement of the claim showing that the pleader is entitled to relief . . ."").

Thus, Plaintiff's proposed amendment could not withstand a motion to dismiss. *See, e.g.*, *Miller*

*v. Wells Fargo Bank, N.A.*, No. 13-CV-1541 (VB), 2014 WL 349723, at *11 (S.D.N.Y. Jan. 30,

2014) (granting motion to dismiss because the Plaintiff's cause of action for injunctive relief

constituted a remedy, not a cause of action in and of itself). In addition, as the Court discussed at

length in its decision denying Plaintiff's joinder request, the Court is unable to extract from

Plaintiff's factual allegations any legal claim against Nelnet which would entitle Plaintiff to an

injunction against Nelnet. *See* Joinder Order at 3-4. Given that the Court has apprised Plaintiff

of these potential defects, and Plaintiff has since failed to cure them, the Court concludes that

granting leave to amend to add Nelnet as a party would be futile, and denies Plaintiff's request.[10]

In addition, Plaintiff, on notice of the alleged deficiencies in his complaint that the

existing defendants have raised, has wholly failed to cure those deficiencies in his proposed

complaint. Of the claims that remain in Plaintiff's proposed complaint, for example, the fraud

claims are comprised of a mere summary of facts already pleaded in Plaintiff's First Amended

Complaint. In that regard, the alleged misrepresentation on Defendants' part is no clearer.

---

[10] Although Plaintiff has invoked the rules governing motions for joinder as well, there is rarely a material
distinction between a request to add a party under Rule 21 and a request for leave to amend to add a party under
Rule 15. *E.g.*, *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013). In any
event, for the same reasons that the Court has articulated here and in its prior order on Plaintiff's Motion for Joinder,
Plaintiff's request to add Nelnet and his husband as parties fails under those standards as well. *See* Order (ECF No.
73).

As to Plaintiff's civil rights and contract claims, Plaintiff has simply reorganized sections of his previous complaints and copied and pasted legal arguments from his papers opposing defendants' motion to dismiss, as well as his motion to transfer venue. For reasons discussed elsewhere in this opinion, those arguments are without merit, and, in any event, are unnecessarily pleaded in the complaint. *See, e.g., Gleis v. Buehler*, No. 3:11 CV663 (VLB), 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012) (suggesting that "it is inappropriate to include legal argument and briefing within a complaint . . .") (citing Fed. R. Civ. P. 8(a)(2)). Plaintiff alleges no further facts purporting to cure the alleged defects asserted by Defendants.

Next, Plaintiff's respondeat superior claim is identical to the claim in his amended complaint, no more clearly stating the tort that Nelson committed for which NYU should be held liable. *Compare* Am. Compl. at 22-23, *with* Second Amended Complaint at 32-33. Plaintiff's restraint of trade claim is also a nearly verbatim copy of the allegations in his First Amended Complaint, with one additional paragraph asserting, in a conclusory fashion, that "Plaintiff has alleged non-conclusory facts," but providing no more supporting factual allegations. *Compare* Am. Compl. at 23, *with* Second Amended Complaint at 38-39. Thus, granting Plaintiff leave to amend his existing claims would also be futile. *See, e.g., Local Union 20 v. United Bhd. of Carpenters & Joiners of Am.*, No. 97–CV–5538 (CSH), 2001 WL 1005565, at *12 (S.D.N.Y. Aug. 6, 2001) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim upon which the court has previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Plaintiff's attempts to add his husband and his loan servicer has parties do not, for the reasons discussed above, alter this result.

For all of the foregoing reasons, the Court is sufficiently convinced that there is no merit to the proposed amendments. Because granting leave to amend would be futile, the Court

declines to do so. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied[.]").[11]

## IV.    Motion to Vacate and Motion for Change of Venue

In light of the Court's dismissal of this case, Plaintiff's motions to vacate the Court's decision on his joinder motion and to transfer venue are DENIED as moot. Even if these motions were not mooted by the Court's dismissal, they are without merit.

Even if it were not moot, Plaintiff's motion to vacate the Court's December 6, 2017 Order, denying Plaintiff's prior motion to join Nelnet as a defendant, lacks basis. Plaintiff invokes Federal Rules of Civil Procedure § 60(b)(1) and (6), which state that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect . . . (6) any other reason that justifies relief." This rule "provides for extraordinary relief," and thus a "motion pursuant to [Rule 60(b)] should be granted only if the moving party demonstrates exceptional circumstances." *In re 1115 Third Ave. Rest. Corp.*, 185 B.R. 12, 14 (S.D.N.Y. 1995) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir. 1994)).

However, Plaintiff has wholly failed to make that showing. Some of his claims of error relate to purported factual inaccuracies in the Court's brief summary of the allegations in his

---

[11] In addition, the proposed pleadings, not to mention Plaintiff's prior pleadings, seem to run afoul of the Federal Rules' provision requiring "a *short and plain* statement of the claim showing the pleader is entitled to relief." Fed R. Civ. P. 8(a) (emphasis added). Plaintiff, a licensed attorney for approaching ten years, has submitted proposed pleadings that are, for the reasons just discussed, not only nonspecific and, at times, unintelligible, but are approximately 45 double-spaced pages in length, often cross-referencing and reproducing portions of unpersuasive legal arguments in prior pleadings and containing details that are wholly tangential to the claims asserted. It is wholly within the province of a district court to reject a pleading on this basis alone, and further to decline to grant leave to amend where, as here, no claim can nonetheless be extracted from the numerous details provided. *Cf., e.g., Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988) (finding district court did not abuse discretion in dismissing complaint of pro se litigant, where complaint was 15 single-spaced pages and contained excessive detail that, though "neither vague nor incomprehensible," still was excessive under Rule 8, but that leave to amend should have been granted because certain claims could have been made out from those details).

Complaint that were wholly immaterial to the Court's legal conclusions on his joinder's motion. *See* Plaintiff's Memorandum of Law at 11 (ECF No. 84). Plaintiff otherwise recycles arguments that this Court has already rejected, and still fails to articulate what legal claim he proposes against his loan servicer. For that reason, Plaintiff's further attack on this Court's declining to grant *in forma pauperis* status for the purposes of an appeal of the joinder decision is also meritless. In sum, Plaintiff has not demonstrated a basis for the "extraordinary relief" of Rule 60(b), the mootness of the request notwithstanding.

And, even if it too were not moot, Plaintiff's motion to transfer venue would be denied because this action could not have been brought in the Central District of California in the first instance. *See* 28 U.S.C. § 1404(a). It is beyond dispute that no defendant resides in the Central District of California, nor did a substantial portion of events giving rise to Plaintiff's claims occur there, but Plaintiff nonetheless asserts that NYU is subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(b) (listing three potential bases for appropriate venue). However, both specific and general jurisdiction over NYU are entirely lacking. All events relevant to this case occurred in this District and NYU lacks minimum contacts in California, despite any charitable efforts it might undertake there. Indeed, Plaintiff himself concedes that the Southern District of New York is the appropriate venue for this case, *see* Am. Compl. at 5, and no change of circumstances since the filing of this action necessitates a transfer of venue. *See Harem-Christensen Corp. v. M.S. Frigo Harmony*, 477 F. Supp. 694, 698 (S.D.N.Y. 1979).[12]

---

[12] Plaintiff argues in passing that having his case heard in this District would result in "harmful prejudice" toward him because NYU Law sponsors an externship with the United States Attorneys' Office of the Southern District of New York. Pl's Venue Mem. at 13-14. However, as the website to which the Plaintiff refers the Court reflects, this externship was in place in 2015, well before Plaintiff filed his complaint, and thus this hardly constitutes a "change in circumstances" necessitating transfer. Even more importantly, any suggestion that this Court would be incapable of rendering an unbiased determination on account of any association NYU has with an entity that routinely practices within the Court (but has no involvement with the instant dispute) is entirely speculative, misplaced, and, in any event, seemingly not a valid basis for a change of venue. *See Jones v. Newman*, No. 98-CV-7460 (MBM), 1999 WL 493429, at *1 n.2 (S.D.N.Y. June 30, 1999) (denying transfer request to pro se civil rights plaintiff suing

Plaintiff argues that the Court should transfer venue because California has more favorable tolling provisions. Plaintiff cites *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988) for the proposition that a court must transfer a case, upon request, when the governing statute of limitations in the transferee venue is more favorable to Plaintiff. Pl's Venue Mem. at 11-12. As an initial matter, the Second Circuit has expressed doubts about the Fourth Circuit's reasoning in *Porter. See Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (disagreeing with *Porter* and holding that transfer is not mandatory in all cases where there is procedural bar to suit in the transferor district, but rather should be considered on case-by-case basis in the interest of justice).

Regardless, Plaintiff's belated discovery of California's more favorable tolling provisions does not constitute a change of circumstances since the filing of his complaint warranting transfer. Even if it did, the Court cannot entertain this request because venue is plainly inappropriate in the Central District of California. *See* 28 U.S.C. § 1404(a) (stating that case can only be transferred to district where it might have been brought). And, even if venue were appropriate in that District, Plaintiff has not shown an entitlement to relief under California law that he would otherwise not have under New York law. Plaintiff argues that his fraud claims, if brought under California law, would not suffer from statute of limitations infirmities because California law provides that a fraud claim accrues upon *discovery* of the facts constituting the fraud, and he did not discover "Defendant(s) obstructing [his] attempts to return federal property to the federal government" until 2015. Pl's Venue Mem. at 11-12. This fact, however, appears to relate to Plaintiff's FCA claim, which would be governed by the applicable federal statute of

judicial officers because the fact that one of the defendants sat as a judge in the district was "insufficient to warrant transfer," even "putting aside that plaintiff himself chose to file in this forum"); *see also Pinkard v. Baldwin Richardson Foods Co.*, No. 09-CV-6308T, 2013 WL 1308713, at *10 (W.D.N.Y. Mar. 28, 2013) (collecting cases suggesting that alleged bias of district is not valid basis for transfer).

limitations, not California's fraud statute. *See supra* Section II.B.1. In any event, the elements of a fraud claim under California law are "substantially similar" to the elements of a fraud claim under New York law. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 339 (S.D.N.Y. 2010). Thus, even if the California statute of limitations applied and was more favorable to Plaintiff, he would similarly fail to state a claim under California law. *See supra* Section II.B.1.

For this litany of reasons, even if Plaintiff's motions were not moot, there is no basis for the relief that he seeks.

## CONCLUSION

Based on the above, Plaintiff's request for judicial notice is GRANTED IN PART. Defendants' motion to dismiss is GRANTED. Plaintiff's requests for leave to amend his complaint and join parties are DENIED. Plaintiff's motion to transfer venue and motion to vacate the Court's decision on his joinder motion are DENIED as moot. The Clerk of Court is respectfully requested to terminate all pending motions and close this case.

In addition, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 445 (1962); *see also Linden v. Harper and Row Publishers*, 490 F. Supp. 297, 300 (S.D.N.Y. 1980) (applying *Coppedge* to civil cases).

**Dated: March 12, 2018**
**New York, New York**

**SO ORDERED.**

_____
Andrew L. Carter, Jr.
United States District Judge